# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FREDERICK GRAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. CIV 17-356-RAW-SPS |
| TIFFANY ADE, et al., | ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff, a pro se state prisoner who is incarcerated at Joseph Harp Correctional Center in Lexington, Oklahoma, filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983 (Dkt. 34). He alleges his constitutional rights were violated while incarcerated at Davis Correctional Facility (DCF), a private prisoner in Holdenville, Oklahoma, and he is seeking injunctive and monetary relief. The defendants, all DCF employees, are: Tiffany Ade, Echo Unit Manager; Captain Hatchman a/k/a Captain Hatton, Security Captain; Sgt. Wright, Security Sergeant; A.W. Perez, Assistant Warden; Terry Underwood, Warden's Assistant; Major Brown, Chief of Security; Major Dorman, Administrative Chief; A.W. Gentry, Assistant Warden of Security; James Yates, Warden; and Officer Garrison, DOC Internal Affairs Officer.

The defendants have filed a motion for summary judgment (Dkt. 74), and a special report prepared by the Oklahoma Department of Corrections (DOC) at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 62). Plaintiff has filed a response to the motion (Dkt. 80) and two supplemental responses (Dkts. 82, 95).

**Plaintiff's Allegations**

Plaintiff alleges that on May 30, 2017, he was transferred from Lawton Correctional

Facility in Lawton, Oklahoma, to DCF. Ezekiel Davis, another prisoner, also was transferred. Plaintiff claims Defendants Ade, Perez, Brown, Dorman, Gentry, and Yates classified him and Inmate Davis before the transfer. Inmate Davis allegedly was to be celled with another prisoner named Marcus Woodson, however, Davis allegedly advised the intake officer he was afraid of Inmate Woodson. Therefore, Inmate Davis initially was placed in a single cell.

On May 31, 2017, Plaintiff and Inmate Davis were initially assessed, and on June 6, 2017, the facility psychiatrist met with them. After the psychiatrist met with Inmate Davis, she allegedly was angry and short on time, and she refused to continue Plaintiff's routine medication. Plaintiff claims he went approximately 11 days without his usual psychotropic medication. He asserts his medication must be taken twice daily for the proper treatment of his many serious schizophrenic, bipolar disorders.

Inmate Davis allegedly took advantage of Plaintiff's vulnerability, using it as an opportunity to prey on him. Plaintiff claims he filed an emergency grievance, as he was told to do by his friends and family. He was attempting to avoid being placed in another special care unit (SHU), because he had experienced SHU approximately seven months earlier.

Shortly after these events, Inmate Davis allegedly began verbally assaulting Plaintiff, because Plaintiff refused to comply with coercive threats by Davis and the prisoner in the next cell to relinquish his property. Davis also hit Plaintiff with a food tray and demanded that Plaintiff hand over his property, shut up, and take the top bunk. In addition, Davis broke the mechanism to activate the cell light, making the cell dark. Plaintiff feared for his life, because other prisoners had told Davis to murder Plaintiff, if Plaintiff did not comply with their demands.

Plaintiff claims that during this constant abuse, his lower back, neck, and right

shoulder were re-injured, and he had new injuries to his lip and right ear, which required medical treatment. On June 11, 2017, C/O Romine and nurses Brill and Lundren came to Plaintiff's cell to document Inmate Davis's predatory behavior. Plaintiff advised them that he had submitted an emergency grievance the day before. Davis still had access to an unauthorized food tray, and he had used it to force Plaintiff to comply with his demands, or face being murdered with the tray. Romine called Defendants Hatchman and Wright, who allegedly were biased, and they refused to listen to Plaintiff. Plaintiff was removed from his cell, and Davis remained. While Plaintiff was in the strip-out cage, he was asked when he last received his psychotropic medication. When he explained that the psychiatrist had failed to reorder the medication, the nurses were directed to provide it to him. Also, Plaintiff's shoes, which Davis allegedly had taken, were retrieved. Plaintiff then was escorted to the Fox-Unit/Bravo SHU. He was not allowed to secure his property but was told the officer would secure it.

Plaintiff submitted two missing property claims, however, Defendants Ade and Yates allegedly made no meaningful resolution. Plaintiff claims he received some of his property, but part of it was damaged. On or around October 24, 2017, Defendant Ade advised Plaintiff that she would correct the problem by finding the missing property and reimbursing him for the damaged property. The unit clerk allegedly attempted to get Plaintiff to agree to an erroneous resolution on October 28, 2017, but Plaintiff refused because Defendant Ade had agreed to correct the problem.

Plaintiff asserts he advised Defendants Perez, Brown, Dorman, Gentry, and Ade that he was being retaliated against for reporting an assault and battery with a dangerous weapon (the unauthorized food tray). He also told them he had been kidnaped, extorted, and robbed.

Plaintiff was in the SHU from June 11, 2017, until July 21, 2017, allegedly resulting

3

in a denial of due process, separation from his property, and loss of consortium with friends and family, as well as mental and emotional anguish. Plaintiff claims he knows of no other prisoner who is treated as he is. It allegedly is the position of Defendants Ade, Perez, and Yates that a documented predator such as Inmate Davis should not be placed with a vulnerable, mentally ill prisoner such as Plaintiff. Plaintiff argues he should not have been labeled a mentally ill, behavioral problem and placed in the SHU. Instead, Inmate Davis should have been moved there, and Plaintiff should have been protected from Davis' abuse.

Plaintiff also complains of a subsequent, inappropriate placement in the SHU by Defendant Ade from September 15, 2017, until approximately December 11, 2017. The placement allegedly arose when Inmate Tony Matin tried to throw urine on Plaintiff, but it hit a correctional officer. Plaintiff claims he was blamed for the incident in retaliation for his grievances. While Defendants Ade, Perez, Gentry, Brown, and Dorman agreed with Plaintiff that he should have not been placed in the SHU for this incident, the officials would not intervene to remove him from the placement.

Plaintiff alleges he has received approximately seven retaliatory misconduct offenses that have caused him to lose his earned credit level, which apparently affected his gang pay. He claims he is deprived of the ordinary treatment received by other, similarly-situated prisoners.

Plaintiff requests restoration of his personal property which was taken without due process by Defendants Wright and Hatchman. Defendants Ade and Perez said they would see to Plaintiff's reimbursement, but have not done so. He asserts the property deprivation coupled with the allegedly inappropriate segregation have exacerbated his depression, resulting in his suicide attempt.

Plaintiff further alleges he was entitled to Protective Measure Inmate (PMI) housing,

4

because he is a vulnerable, capricious, mentally ill prisoner. He claims that because Defendants Ade and Perez did not assure his safety, he was viciously attacked and had property taken and destroyed. Because of the abuse, he had difficulty sleeping and was in constant fear of being attacked again and having his property stolen.

Plaintiff further contends Defendants Underwood and Yates retaliated against him by placing him on an excessive and arbitrary grievance restriction, whereby it cost approximately $30.00 for a notary before he can submit a grievance. This restriction deterred him from filing grievances about his housing situation which was emotionally and psychologically abusive. He claims that at the time the complaint was filed, he had an overbearing cellmate, Inmate Paul Roppolo, who manipulated him with words, instead of violence. Roppolo allegedly complained about the cell conditions and Plaintiff's habits and behavior. Plaintiff was afraid to speak up for himself, because Roppolo had gotten angry and slung things around the cell after Plaintiff cleaned it, and he also feared Roppolo would file a bogus PREA complaint against him.

Plaintiff also claims the Law Library Supervisor, Ms. Willa Burney, denied him access to the courts. Ms. Burney, however, is not a defendant in this action. He asserts Defendants Ade, Brown, Yates, Dorman, Perez, Gentry, and Underwood colluded to retaliate against him for standing up for his constitutional rights through the grievance process. He claims the defendants discouraged him from using the process by advising him that it was unnecessary to use the DOC 09-OP-0901240 form to begin the grievance process. Defendant Perez allegedly told Plaintiff he would find another prisoner with as many complaints as Plaintiff and cell the other prisoner with Plaintiff.

Plaintiff told Defendant Perez he had Obsessive-Compulsive Disorder about sanitation, and he was entitled to a clean cell with furnishings. Perez told Plaintiff to write

5

him on the least formal 09-OP-90124E form. In November 2017, when Plaintiff did as instructed, however, none of his concerns were fully addressed.

Plaintiff next alleges that when he learned from Defendants Perez and Brown that Defendants Wright and Hatchman failed to follow the norms of a cell altercation/emergency cellmate separation by writing a required report, Plaintiff sought an immediate Internal Affairs Investigation. He complains that when Defendant Garrison responded to Plaintiff's inquiry about Inmate Davis's being punished for attacking Plaintiff, he was advised that Defendant Ade would handle the investigation. Defendants Ade, Brown, Gentry, Dorman, and Perez stated they were looking into the issue; however, Inmate Davis was not punished.

**Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Exhaustion of Administrative Remedies**

Defendants have filed a motion for summary judgment, alleging among other things that Plaintiff has failed to exhaust the available administrative remedies for most of his claims. The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust available administrative remedies before filing a lawsuit concerning prison conditions under 42 U.S.C. § 1983, including Eighth Amendment claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

Defendants allege DCF utilizes the Oklahoma Department of Corrections (DOC) administrative remedies grievance policy OP-090124. According to the policy, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit

a grievance to the Review Authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender may file a grievance. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been taken. (Dkts. 74-2 at 3; 74-3).

Inmates who abuse the grievance process may, by policy, be placed on grievance restriction. Terry Underwood, DCF Grievance Coordinator, states by affidavit that in determining abuse of the grievance process, the appropriate reviewing authority may determine there is abuse or misuse of the grievance process and may restrict the inmate's ability to submit a grievance. (Dkt. 74-2 at 3; 74-3 at 17-19).

According to Underwood, Plaintiff arrived at DCF on or about May 31, 2017. He had been placed on grievance restriction on April 10, 2017, *prior* to his arrival. The restriction was for one year's duration. (Dkt. 74-2 at 4). The applicable DOC policy states:

> The offender will submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance . . . , stating that all contents of the grievance are true and correct to the best of the inmate's/offender's knowledge. The affidavit will also contain a complete, accurate, and legible list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the inmate/offender within the last 12 months. Each page of the affidavit must be legible and signed, verified, and notarized at the end of the text. . . .

DOC OP-090124(IX)(B)(2)(a) (Dkt. 74-3 at 18-19).

**June 7, 2017, Grievances**

The record shows Plaintiff filed the following five grievances on June 7, 2017. All were returned to him unanswered on June 9, 2017, for procedural defects, including the facts that he was on grievance restriction before he arrived at DCF, and that he had failed to submit the proper documentation for filing any of the grievances. *See* DOC OP-

8

090124(IX)(B)(2)(a).

Grievance No. 17-139 concerned Plaintiff's request for diabetic shoes. (Dkt. 74-4 at 2-5).

Grievance No. 17-140 was related to Plaintiff's request to have his pain medication from Lawton Correctional Facility filled or provided. *Id*. at 6-12.

Grievance No. 17-141 asserted that Plaintiff's recent misconduct was bogus and retaliatory. In addition to the procedural defects set forth above, misconducts are not grievable issues. *Id*. at 13-19.

Grievance No. 17-142 concerned Plaintiff's requests for RTS forms, grievance forms, and library disbursement forms. *Id*. at 20-24.

Grievance No. 17-143 was related to Plaintiff's request for a comprehensive jacket review. *Id*. at 25-29.

**June 12-27, 2017, Grievances**

Grievance No. 17-147 was received on June 12, 2017, as an emergency grievance. Plaintiff complained of his cellmate and asked to be moved from his cell on Echo Bravo. After Defendant Ade, Unit Manager for Echo Bravo, investigated the matter, Plaintiff was moved to Fox Bravo the weekend after he wrote the grievance. Therefore, his request for relief was granted, and the issue of his being removed from his cellmate Inmate Davis was resolved. *Id*. at 30-35. The claim in this grievance was exhausted.

Grievance No. 17-160 was received on June 27, 2017, and was related to Plaintiff's request that his cellmate be prosecuted. The grievance was returned unanswered on June 29, 2017, as illegible and for procedural defects, including that he was on grievance restriction when he arrived at DCF, and he had failed to submit the proper paperwork for filing his grievance. He was permitted to resubmit the grievance. He resubmitted it, but the

9

resubmission was untimely. *Id*. at 36-100. Therefore, no issues in this grievance were exhausted.

**June 19, 2017, Grievances**

Plaintiff filed the following four grievances on July 19, 2017. All were returned unanswered on July 31, 2017 for procedural defects, including Plaintiff's grievance restriction and the fact that he continued to fail to submit the proper paperwork for filing his grievances, as described above. No issues in the complaint were exhausted by these grievances.

Grievance No. 17-187 was received on July 19, 2017, and was related to Plaintiff's request to be single celled. (Dkt. 74-5 at 2-4).

Grievance No. 17-188 also concerned Plaintiff's request to be single celled. In addition to the procedural defects set forth above, this grievance was untimely. *Id*. at 5-40.

Grievance No. 17-189 was related to Plaintiff's request that Inmate Davis be punished. In addition to the procedural defects, this grievance also was untimely. *Id*. at 41-61.

Grievance No. 17-190 concerned Plaintiff's request that he be single-celled or transferred. *Id*. at 62-95.

**August 11, 2017, Grievance**

Grievance No. 17-201 was received on August 11, 2017, marked "Emergency." Plaintiff stated he was in fear of harm from his cellmate and asked to moved to a single cell. The grievance was answered that day, stating that after investigation, Plaintiff would be moved from his cell into a temporary single cell. Therefore, his request to be moved was granted, but his request to remain single celled was denied. *Id*. at 96-98. The claim in this grievance was exhausted.

**September 1, 2017, Grievances**

Plaintiff filed two grievances on September 1, 2017, and both were marked "Emergency." Both grievances were returned to him unanswered on September 6, 2017, because they were found not to be of an emergency nature. No issues in the complaint were exhausted by these grievances.

Grievance No. 17-222 was related to Plaintiff's request that he receive a lateral transfer because he was not seen by mental health staff. In addition to the procedural defects, the document returning the grievance stated that Plaintiff had been seen by mental health, and classification movement requests to transfer to another facility are not grievable. *Id*. at 99-103.

Grievance No. 17-223 concerned Plaintiff's request that he be treated the same as any other offender who holds his service port hostage. *Id*. at 104-07

**September 12-25, 2017, Grievances**

Plaintiff next submitted four grievances between September 12 and September 25, 2017. All were returned unanswered because of procedural defects, including having been submitted out of time or not presenting a grievable issue. No issues in the complaint were exhausted by these grievances.

Grievance No. 17-233 was received on September 12, 2017, and was related to a complaint about stolen property. The grievance was returned unanswered on September 14, 2017, for procedural defects, including that the grievance was not submitted about a grievable issue. Private, contracted facility property issues are non-grievable. *Id*. at 108-12.

Grievance No. 17-234 was received on September 15, 2017, and concerned Plaintiff's request for a transfer. His grievance was returned unanswered on the day of submission for procedural defects, including that the grievance was not submitted about a grievable issue,

the grievance was out of time, and the grievance had not been signed. *Id*. at 113-15.

Grievance No. 17-236 was received on September 28, 2017, and was related to Plaintiff's request to be single-celled. The grievance was returned unanswered on October 2, 2017, for procedural defects, including that the grievance was untimely and incomplete. *Id*. at 116-22.

Grievance No. 17-244 was received on September 25, 2017, and concerned Plaintiff's request that his C/O be told he cannot deny Plaintiff's request to be seen by mental health services. The grievance was returned unanswered the same date for procedural defects, including that the grievance was filed out of time. *Id*. at 123-27.

Plaintiff contends his efforts to access the grievance process were thwarted, thus depriving him of "available" remedies. "The plain language of the PLRA requires that prisoners exhaust only *available* remedies. . . . It follows that if an administrative remedy is not available, then an inmate cannot be required to exhaust it." *Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011) (emphasis in original). "Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust." *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (citation omitted).

Defendants maintain that Plaintiff's allegation that he was unable to exhaust his administrative remedies is not accurate. A review of Plaintiff's allegations and the DOC Grievance Policy clearly shows that Plaintiff was not thwarted from exhausting his claims. Instead, Plaintiff chose not to follow the clearly outlined exhaustion procedure. There is no evidence that additional requirements were applied to Plaintiff by the Grievance Coordinator.

The Court notes that Plaintiff complained in his June 21, 2017, RTS that "it would be extremely unreasonable to expect a prisoner who does not support his own self to spend

12

approx. $25.00 for submitting a single grievance." The response to the RTS stated, "Policy says each page is to be notarized. See Grievance Policy 090194, Page 18 Attached." (Dkt. 1-1 at 39). Therefore, Plaintiff was aware of the policy, but he simply continued to make improper submissions. The Court finds there is no evidence that his efforts to exhaust his administrative remedies were thwarted.

**Failure to Protect Claim**

Plaintiff alleges Defendant Unit Manager Ade failed to protect him by failing to properly classify him before he was attacked. Plaintiff further asserts he later was punished for reporting abuse and was housed on a restrictive housing unit.

Under the Eighth Amendment, prison officials have a duty to "provide humane conditions of confinement," including "tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted). This includes "a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (citations omitted).

> First, the alleged deprivation must be "sufficiently serious" under an objective standard. *Id*. at 834 (quotation omitted). In cases involving a failure to prevent harm, this means that the prisoner must show that the conditions of his incarceration present an objective "substantial risk of serious harm." *Id*.; *see also Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006).
>
> Second, the prisoner must show that prison officials had subjective knowledge of the risk of harm. In other words, an official "must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. This knowledge may be proved "in the usual ways, including inference from circumstantial evidence, and a fact-finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. at 842 (citation omitted). . . .

*Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008).

The Supreme Court has expressly rejected the suggestion that a prison official violates the Eighth Amendment when he might have known or should have known of a risk of harm.

13

*Farmer v. Brennan*, 511 U.S. at 837-38 (1994). Instead, a prison official must know of and disregard an excessive risk to inmate health and safety. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing Farmer, 511 U.S. at 837).

Here, the Court finds there is no factual basis for finding Defendants acted with deliberate indifference to Plaintiff's safety, and Plaintiff's allegations against Defendant Ade are baseless. Plaintiff asserts he was assaulted by Inmate Davis, however, his grievance for the issue only asserted he was in fear of harm. By the time that grievance was received by the grievance coordinator on June 12, 2017, however, Plaintiff had been moved from his cell on July 11, 2017, when he reported to the on-duty staff that he feared for his safety. (Dkts. 74-4 at 30-35).

Further, Grievance No. 17-147 indicates Plaintiff agreed with having Davis as a cellmate. Plaintiff stated in the grievance, "If I knew Mr. Davis better I would have known better than to accept him as a cellmate." (Dkt. 74-4 at 35). There was no prior knowledge of problems between Plaintiff and Davis, and Plaintiff has presented no evidence that he had complained about Davis before June 11, 2017. Also, Plaintiff made no requests for protection from Davis. (Dkt. 74-2 at 7).

Plaintiff's claims that he was improperly classified also are meritless. Defendant Ade states by affidavit that she conducted the initial classification reviews for Plaintiff and Davis. The records available to her at that time indicated Plaintiff was both a potential victim and a potential predator, meaning some care must be taken when making his housing assignment. She further stated that such care was taken when she approved these two inmates' requests to be celled together, because Davis was not listed as predator or a victim. (Dkt. 74-7 at 3).

Plaintiff's other allegation of failure to protect asserts that on July 20, 2017, he was housed with Inmate Martin, another violent prisoner who also assaulted him. On August 11,

2017, Plaintiff submitted an emergency grievance which resulted in his removal from his cell before 10:00 a.m. the same day. (Dkts. 74-5 at 96-98; 74-7 at 4).

Here, the Court finds there is no factual basis for finding the defendants, in particular Defendant Ade, acted with deliberate indifference to Plaintiff's safety. For Plaintiff to proceed under § 1983, he must show "knowledge of a need and an unwillingness to act on the part of the prison officials." *Baker v. Holden*, 787 F. Supp.1008, 1018 (D. Utah 1992). Plaintiff has not met either requirement. He never complained of threatened harm, and never requested protective custody, prior to filing a grievance. When he did notify the prison staff, he immediately was moved on both occasions. Given the circumstances presented in this case, the Court finds no factual or legal basis for Plaintiff's alleged Eighth Amendment violation.

**Property Claims**

Plaintiff alleges that as a result of his being removed from his cell by Defendants Hatchman and Wright (at Plaintiff's request) on the morning of June 11, 2017, he lost several items of property. He asserts that because Hatchman and Wright did not allow him enough time to collect and box his belongings, some of this property was stolen.

Plaintiff filed two property claims concerning property he asserts was stolen by his cellmate. Those claims were investigated by the property officer and found to be "invalid or unsubstantiated." Plaintiff appealed the decision, and the appeal was denied. (Dkt. 74-6).

Defendant notes that Plaintiff does not specifically allege he was denied due process with regard to his property claims, however, to the extent the claim is construed in that manner, it must fail. Even if the Court accepts Plaintiff's versions of the events as true, he has provided no legal authority showing that the failure of Hatchman and Wright to allow Plaintiff to pack up his own property before being removed from his cell at his own request,

and allegedly for his own safety, would support a claim under § 1983.

Random and unauthorized deprivation of a prisoner's property does not violate due process, as long as a meaningful post-deprivation remedy is available. *Winters v. Board of County Comm'rs*, 4 F.3d 848, 856-57 (10th Cir. 1993) (citing *Hudson v. Palmer*, 468 U.S. 517, 531-533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981)). *See also Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991) (valid § 1983 claim for loss of prisoner's property must include allegations of deliberate conduct); *Daniels v. Williams*, 474 U.S. 327, 328 (1986) ("Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to . . . property.") Here, Plaintiff has presented no evidence that the officers acted to deliberately deprive him of his property. Further, Plaintiff has failed to plead that any post-deprivation remedy for the loss of his property was inadequate.

The Court finds Plaintiff received the proper measure of due process for his property claims. More important, the property claims show that all of Plaintiff's items were returned, and he signed both property claims acknowledging the returns. (Dkt. 74-6 at 3, 5). Therefore, Plaintiff has failed to establish a property deprivation claim.

**Conclusion**

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact with respect to the findings that all except two of Plaintiff's claims are unexhausted, and that Plaintiff had the ability to commence his administrative remedies. The Court further concludes there are no genuine issues of material fact that Plaintiff is not entitled to relief for his failure-to-protect claim and his property claims. Therefore, summary judgment is GRANTED.

**ACCORDINGLY,** the defendants' motion for summary judgment (Dkt. 74) is GRANTED, and this action is DISMISSED in its entirety.

**IT IS SO ORDERED** this 30th day of September 2019.

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma